IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

In Re: Administrative Subpoena    )
WALGREEN CO.,                      )
                                   )
     Movant,                       )
                                   )
        v.                         )    1:12-mc-43 (JCC/IDD)
                                   )
UNITED STATES DRUG                 )
ENFORCEMENT ADMINISTRATION         )
                                   )
     Respondent.                   )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Movant Walgreen
Co.'s Objections [Dkt. 37] to the Magistrate Judge Ivan D.
Davis' Order [Dkt. 32] denying Walgreens' Motion to Compel
Return of Privileged Material [Dkt. 1] for lack of subject
matter jurisdiction and the absence of a cause of action upon
which to compel the Drug Enforcement Administration ("DEA") to
return documents.  For the following reasons, the Court will
affirm the Magistrate Judge Davis.

**1.    Background**

1.   <u>Factual Background</u>

This case arises from Magistrate Judge Davis' denial
of Movant's Motion to Compel Return of Privileged Material ("the
Order").  In Judge Davis' Order, the court found that "there is
no subject matter jurisdiction to hear the request and no cause

1

of action upon which to compel the Drug Enforcement
Administration to return documents."  (Order at 1.)

Walgreens is required, as a distributor and dispenser
of controlled substances, to maintain a DEA registration.  In
March of 2012, DEA issued a subpoena for documents to Walgreens
("subpoena") related to their distribution facility in Jupiter,
Florida, and a number of Walgreens retail pharmacies located in
the state. [Dkt. 2-1 Ex A.]  A Magistrate Judge thereafter
issued a Warrant for Inspection in April for various records,
reports, files, and other documents associated with the DEA's
investigation. [Dkt. 2-1 Ex B.]  Walgreens complied with the
terms of the subpoena and on June 8, 2012 made its fifth and
final production in response.  Walgreens did not include a
privilege log.  An accompanying cover letter stated that two of
Walgreens' in-house attorneys and an outside counsel had
conducted a review of the produced materials "to verify that the
materials were non-privileged and responsive to the . . .
categories of requests set forth in [the DEA subpoena]."  A
privilege log was promised in "in due course." [Dkt. 19-4.]
Among the documents produced was a series of e-mails between
involving various Walgreens personnel, including Dwayne Pinon, a
Walgreens corporate attorney. [Dkt. 19-16.]

On August 9, 2012, DEA wrote a letter to Walgreens
requesting that it produce a privilege log. [Dkt. 19-7.]

2

Walgreens was informed that, because it had certified it had conducted a privilege review, the DEA assumed that Walgreens was not claiming privilege over the e-mails from Mr. Pinon included in the production, totaling 61 documents that included Mr. Pinon's name.  On August 10, 2012, Walgreens' counsel responded to DEA's letter stating that it was "currently processing this information" and that it would send "a privilege log, along with any qualifying information, as soon as possible." [Dkt. 2-3 Ex. 3.]  Over the following month, the DEA states that Walgreens did not contact DEA to claim privilege over any of the e-mails involving Mr. Pinon that had been produced, and they did not produce a privilege log. (DEA Resp. at 4.)  The DEA states that because Walgreens did not claim privilege during this time, and because Walgreens had stated when it completed its production that it had conducted an extensive privilege review, the DEA concluded that Walgreens was not claiming privilege over the e-mails from Mr. Pinon that were produced. (DEA Resp. at 4-5.) On September 13, 2012, the DEA Administrator signed an Immediate Stop Order ("ISO") for Walgreens' Jupiter facility.  The ISO described and relied in part on an e-mail involving Mr. Pinon. [Dkt. 19-8.]

On September 14, 2012, after DEA had provided a copy of the ISO to Walgreens' counsel, a member of Walgreens' legal team emailed the DEA with an attached letter, authored by

3

counsel David S. Weinstein, seeking the return of documents that
Walgreens claims were "inadvertently and erroneously produced"
on June 8. [Dkt. 19-11.] The letter is dated September 10, 2012.
[*Id.*]  Walgreens did not email this letter to DEA prior to
September 14. [Dkt. 19-12.]  The letter was postmarked September
12. (DEA Resp. at 5.)  The parties do not dispute, and the
record shows, that DEA did not have it when the ISO was signed.
[Dkt. 19-10.] Walgreens produced a privilege log on September
27, 2012. [Dkt. 19-12.]

  Although DEA has not returned the e-mails in dispute,
it communicated to Walgreens on October 3, 2012, its decision
not to "voluntarily publicly release the ISO" or to "make
further affirmative use of the claimed material pending a
determination of the privilege issue," and to "safeguard the e-
mail and the ISO as it does for all evidence collected during an
investigation." [Dkt. 19-13.] On the same day, October 3,
Walgreens filed the present Motion seeking an order compelling
DEA to return the allegedly privileged documents.  On October
10, 2012, Walgreens also filed a petition for review of the ISO
in the D.C. Circuit. [Dkt. 19-19.] Walgreens also intends to
contest the allegations in the ISO during an upcoming
administrative hearing before DEA. [Dkt. 19-14; 19-15.]
Walgreens' counsel has stated that the hearing is scheduled for
January 7, 2013.

**2.**   Procedural Background

Movant's original Motion to Compel Return of
Privileged Material [Dkt. 1] was filed on October 3, 2012.  They
also filed a Memorandum in Support. [Dkt. 2.]  The action was
referred to Magistrate Judge Davis.  On November 9, 2012, Judge
Davis entered an Order dismissing Movant's Motion to Compel for
lack of subject matter jurisdiction and failure to state a cause
of action.  [Dkt. 32.]  On November 16, 2012, Movant filed the
present Objections to the Order Denying their Motion to Compel.
[Dkt. 37.]  On December 7, 2012, the DEA filed a Response to
Walgreens' Objections.  [Dkt. 39.]  On December 12, 2012, Movant
filed a Reply to the DEA's Response.  [Dkt. 41.]

### 2.    Standard of Review

There is some disagreement as to what standard of
review should be employed in reviewing the position of the
Magistrate Judge.  In their Objections memorandum, Walgreens
suggests that a *de novo* standard is appropriate because the
Motion to Compel was dispositive of the present business.  At the
magistrate level, Judge Davis observed that, because there was no
pending case or proceeding underlying Walgreens' Motion to Compel,
ruling on the Motion was not be dispositive. Tr. 27:13-15. If that
were the case, the clearly erroneous or contrary to law standard
would seemingly apply.  Thus, in order to decide this question, the
Court must first determine whether a motion to compel is, in this

context, a "dispositive" or "non-dispositive" motion within the meaning of Rules 72(a) and 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1).

Rule 72(a) of the Federal Rules of Civil Procedure allows a magistrate judge to hear and decide non-dispositive motions. If a party wishes to object to a magistrate judge's order, he may do so within ten days and the district court will review the magistrate judge's order under a clearly erroneous or contrary to law standard. Rule 72(b) provides that a magistrate judge can make only recommendations as to dispositive motions and that the district judge, upon a *de novo* review, makes the final decision. Neither Rule 72(a) nor 72(b) defines the term "dispositive" beyond stating that a magistrate judge may issue an order in a case "not dispositive of a claim or defense of a party" and that he may issue only a recommendation in a case "dispositive of a claim or defense of a party...."

The Court observes here that neither the ruling of this Court as it relates Walgreens' Objections, nor the original ruling of Judge Davis, dispose of Walgreens' "claim or defense" of privilege over the documents in questions. Walgreens is still capable of claiming privilege over the documents. Furthermore, neither this Court's ruling, nor that of Judge Davis, forecloses Walgreens from filing a motion to quash the subpoena or a motion for a protective order.

In filing the instant Motion to Compel, Walgreens seeks a favorable ruling upon the issue of privilege, through which to they would be able compel the return of documents upon which the DEA has relied in issuing the ISO for Walgreens' facility, thereby sidestepping the necessity of mounting a direct challenge to either subpoena or the ISO.  Though the case law cited by and relied upon by Walgreens seemingly represents an entreaty to the Court to construe its jurisdiction over the present Motion as similar to its ability to hear a motion to quash an administrative subpoena, this case does not present a situation wherein it is appropriate to treat the present Motion as a motion to quash. The Court simply does not find it appropriate to do so when the Movant, by its own admission, has stated that "[they] don't have a motion to quash here."  Tr. 7:20-21.

In essence, the Movant has made an evidentiary motion, and seeks a ruling as to privilege, yet has no underlying case, claim, or cause of action before this Court. While there is authority that suggests the applicability of either standard, the Court is confident that, whatever the standard employed, the result is the same with regard to the present Motion.  Thus, the Court will review the proceedings *de novo*.

### 3.   Analysis

1. <u>Jurisdiction under 28 U.S.C. § 1346(a)(2)</u>

The Supreme Court has recognized that "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Walgreens asserts that the Court has subject matter jurisdiction over this miscellaneous action pursuant to 28 U.S.C. § 1346(a)(2).  The Tucker Act actually consists of two parts: 28 U.S.C. § 1491 and 28 U.S.C. § 1346(a)(2).  The latter section, commonly known as the "Little Tucker Act," reads:

> (a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 7104 (b)(1) and 7107 (a)(1) of title 41. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall

          be considered an express or implied contract
          with the United States.

28 U.S.C. § 1346(a)(2). From the outset, the Court notes that

that the essence of the relief sought by Movant is injunctive in

nature and that Movant is not seeking monetary relief. Indeed,

there is no component of monetary relief being sought here

whatsoever. Standing alone, Fourth Circuit precedent holds that

28 U.S.C. § 1346(a)(2) does not itself confer jurisdiction where

there are no monetary damages or a monetary component of the

relief sought upon which to premise jurisdiction under the

Tucker Act. *See Randall v. United States*, 95 F.3d 339, 348 (4th

Cir. 1996).

      However, that is not the end of the present inquiry.

Movant argues that because the instant "proceeding ... arises

from federal agency action ... the 1976 Amendments to the

Administrative Procedure Act ('APA') govern." (Mov. Objs. at

3.) The APA allows "[a] person suffering legal wrong because of

agency action" to seek judicial review of the agency action. 5

U.S.C. § 702; *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871,

882-83 (1990). The Supreme Court has stated that it is

"undisputed that the 1976 amendment to [5 U.S.C.] § 702 was

intended to broaden the avenues for judicial review of agency

action by eliminating the defense of sovereign immunity in cases

covered by the amendment...." *Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988).

Under the APA, a court can review an agency action only when a statute makes the action reviewable or the action was a "final agency action for which there is no other adequate remedy." 5 U.S.C. § 704; *see Lujan*, 497 U.S. at 882. If the challenged agency action is not "final" under the APA, a court must dismiss the complaint for lack of subject matter jurisdiction. *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 460 (4th Cir. 2004). The party asserting jurisdiction under the APA carries the burden of proving the existence of such jurisdiction by showing that the challenged action constitutes a "final agency action." *Shipbuilders Council of Am., Inc. v. United States Dep't of Homeland Sec.*, 481 F.Supp.2d 550, 555 (E.D.Va. 2007) (citation omitted). The "core question" as to finality is whether an action marks the completion of "[the agency's] decision[-]making process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). The Supreme Court explained that

> two conditions must be satisfied for agency
> action to be 'final': First, the action must
> mark the consummation of the agency's
> decision[-]making process - it must not be
> of a merely tentative or interlocutory
> nature. And second, the action must be one
> by which rights or obligations have been

10

> determined, or from which legal consequences
> will flow.

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)(internal

quotations and citations omitted).  Stated differently, the

factors relevant to determining whether an agency action is

"final" under the APA are explained in the following analogous

terms: "(1) whether the action is a definitive statement of the

agency's position; (2) whether the action had the status of law

and immediate compliance with its terms was expected; [and] (3)

whether the action had a direct impact on the day-to-day

business of the plaintiff...." *Trinity Indus., Inc. v. Herman*,

173 F.3d 527, 532 (4th Cir. 1999).

Through this framework, the present inquiry becomes

whether the agency action was the consummation of the agency's

decision-making process and determined Walgeens' rights and

obligations.  Here, Movant has not carried their burden

regarding the proposition that the DEA's mere possession of the

documents Walgreens considers privileged constitutes a final

agency action.  The Court notes that through this freestanding

Motion to Compel, Walgreens is not challenging the ISO itself or

moving to quash the administrative subpoena.  The Court

reiterates that Walgreens has conceded as much, stating "[w]e

don't have a motion to quash here."  Tr. 7:20-21.  Rather,

Movant seeks from this Court a favorable ruling upon the issue

of privilege, by means of which to compel the return of the
subject documents they produced in complying with the
administrative subpoena.  Rather than challenging the subpoena
itself, according to Walgreens, "the only issue at stake in this
proceeding is whether the [allegedly privileged] material can be
used by DEA as evidence."  (Mov.'s Reply [Dkt. 29] at 15.)

    Framing the inquiry in such a manner, Walgreens is still
capable of claiming privilege over the documents.  From the outset,
it is clear that Walgreens has not exhausted their administrative
remedies as to the issue.  DEA regulations provide an
opportunity for Walgreens to "object[] to the admission or
rejection of any evidence." 21 C.F.R. § 1316.60.  Indeed, an ALJ
can rule on a claim of privilege "just as he could rule on any
issue of evidence presented to him during the course of a
hearing."  *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 499
(4th Cir. 2011).  Appeal to the DEA Administrator of an adverse
ruling is also allowed.  21 C.F.R. § 1316.62.  It is clear that
Walgreens intends to pursue action at the administrative level,
having scheduled an administrative hearing before the DEA to
contest the allegations in the ISO.  This hearing is scheduled
for January 7, 2013.

    Merely alleging the DEA Administrator initially
refused to return the documents does not carry to connotation
that the DEA's ultimate position as to privilege is a foregone,

adverse conclusion.  There has also been a showing that the DEA will not "voluntarily publicly release the ISO," will not "make further affirmative use of the claimed material pending a determination of the privilege issue" and to "safeguard the e-mail and the ISO as it does for all evidence collected during an investigation." [Dkt. 19-13.]  The Court believes this weighs against the notion that there has been a "final agency action."

This Court finds that Movant has not carried their burden of establishing that a "final agency action" exists, and thus finds that there is a lack of subject matter jurisdiction under the APA.

## 2. Jurisdiction under 21 U.S.C. § 876(c)

Movant Walgreens has also asserted that this Court has subject matter jurisdiction over this action through 21 U.S.C. § 876(c).  That section reads:

> (c) Enforcement
>
> In the case of contumacy by or refusal to obey a subp[o]ena issued to any person, the Attorney General may invoke the aid of any court of the United States within the jurisdiction of which the investigation is carried on or of which the subp[o]enaed person is an inhabitant, or in which he carries on business or may be found, to compel compliance with the subp[o]ena. The court may issue an order requiring the subp[o]enaed person to appear before the Attorney General to produce records, if so ordered, or to give testimony touching the matter under investigation. Any failure to obey the order of the court may be punished

13

> by the court as a contempt thereof. All
> process in any such case may be served in
> any judicial district in which such person
> may be found.

21 U.S.C. § 876(c).  It is accepted that the scope of judicial

review in an administrative subpoena enforcement proceeding is

"quite narrow." *United States v. Golden Valley Elec. Ass'n*, 689

F.3d 1108, 1113 (9th Cir. 2012).  From the text of the statute,

it is clear that it provides the Attorney General with the right

to invoke federal district court jurisdiction to enforce an

administrative subpoena.  However, the present action is not an

enforcement action brought on behalf of the Government or an

agency thereof compelling Walgreens' compliance. This proceeding

simply does not entail the same procedural posture as an

enforcement action, and a cursory reading of the text

demonstrates that Congress has not afforded Movant the right to

bring this challenge as if it were similarly situated to the

Government in its latitude to bring enforcement actions to

compel compliance.  Indeed, Walgreens concedes as much, stating

that "the statute makes no provision for a recipient to

challenge government conduct in administering the subpoena."

(Mov. Obj. at 5.)

However, Walgreens argues that § 876(c) should be

interpreted as allowing subject-matter jurisdiction here, and

cites cases where courts have read into the statute subject

14

matter jurisdiction over actions of a recipient to quash a
subpoena.

Walgreens argues that the case of *Greene v.
Philadelphia Housing Authority*, 789 F. Supp. 2d 582 (E.D.Pa. 2011),
demonstrates a sufficiently analogous situation in which a court
permitted subject-matter jurisdiction.  In that case, Mr. Greene,
a former executive director of the Philadelphia Housing Authority
("PHA") and a third-party to the subpoena, moved to enjoin the PHA
from producing in response to a subpoena issued by the United
States Department of Housing and Urban Development ("HUD")
certain unredacted legal invoices that might include notes from
Mr. Greene's meetings with counsel that took place during his
tenure as executive director that related to matters upon which
counsel had represented Mr. Greene in his individual capacity.
Mr. Greene argued that the production of those legal invoices
concerning the meetings might include documents subject to his
attorney-client privilege.  However, Mr. Greene agreed in that
the PHA could release to HUD those legal invoices identified in
the HUD subpoena that only represented Mr. Greene in his
official capacity. *Id.* at 587.

Regarding the legal invoices that related to matters
in which Mr. Greene was represented in an individual capacity,
the judge in that case framed Mr. Greene's motion as a motion to
quash the production of those documents, reasoning that it had

15

subject-matter jurisdiction as a consequence of its jurisdiction to quash the subpoena. *Id*. However, rather than ruling upon the privilege of those documents, and thereafter compelling their return, the Judge ordered that PHA should "review the remaining legal invoices identified in the HUD subpoena and bring to [the judge's] attention any that may contain privileged information." *Id*.

However, this Court reiterates that it is inappropriate to interpret the present motion as a motion to quash. Walgreens has conceded as much, stating "[w]e don't have a motion to quash here." Tr. 7:20-21. A party to the subpoena, Walgreens seeks a positive ruling on the issue of privilege from this Court as a means effectuate the return of materials that have already produced to the DEA in compliance the subpoena and over which there was no claim of privilege at the time they were produced. Here, Walgreens has already undertaken complying with their terms and simply seeks a ruling to disallow the evidentiary use of some documents that they produced through their compliance. There is no challenge to the subpoena itself, and thus the instant action does not present a factually analogous situation to *Greene*, which itself does not represent controlling precedent.

Movant has also suggested that there is *Leedom* jurisdiction in this case, citing *Leedom v. Kyne*, 358 U.S. 184

16

(1958).  In *Leedom*, the Supreme Court recognized a nonstatutory

exception to the § 704 finality requirement in cases in which

agencies act outside the scope of their delegated powers and

contrary to "clear and mandatory" statutory prohibitions.

*Leedom,* 358 U.S. at 188-90. The finality exception in *Leedom* is

limited.  It is properly invoked only where the absence of

federal court jurisdiction over an agency action "would wholly

deprive" the aggrieved party "of a meaningful and adequate means

of vindicating its statutory rights."  *Bd. of Governors, Fed.*

*Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43, 112 S.Ct.

459, 116 L.Ed.2d 358 (1991). The Fourth Circuit has stated that

the exception has "narrow limits" and has "construed the

exception accordingly, finding *Leedom* jurisdiction appropriate

only where there is a "strong and clear demonstration that a

clear, specific and mandatory [statutory provision] has been

violated." *Long Term Care Partners, LLC v. United States*, 516

F.3d 225, 234 (4th Cir. 2008).

Here, Movant has failed to demonstrate that DEA has

violated "clear and mandatory statutory prohibitions." Further,

Movant has not articulated any "statutory right" that it cannot

vindicate through other means, such as those previously

discussed in this Opinion. *See Long Term Care Partners*, 516 F.3d

at 233. Indeed, Walgreens intends to contest the allegations in

the ISO during an upcoming administrative hearing before DEA on

January 7, 2013. As previously discussed, an ALJ may hold an evidentiary hearing on the issue of privilege. Furthermore, Walgreens also filed a petition for review of the ISO in the D.C. Circuit on October 10, 2012.

### 3. Jurisdiction under 28 U.S.C. §§ 1331 and 1361

28 U.S.C. § 1331 confers original jurisdiction in the district court of all civil actions arising under the Constitution, laws, or treaties of the United States.  It is well-settled that Section 1331 "is not a general waiver of sovereign immunity.  It merely establishes a subject matter that is within the competence of federal courts to entertain." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989) (citation omitted); *Humphreys v. United States*, 62 F.3d 667 (5th Cir. 1995) (holding that 28 U.S.C. § 1331, by granting district courts jurisdiction over constitutional claims, does not thereby waive sovereign immunity).  As the Supreme Court has recognized, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Furthermore, "a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

Here, Movant's Motion has been based upon Federal
Rule of Civil Procedure 26(b)(5)(B).  It is evident that they
are not a treaty.  Furthermore, the Federal Rules of Civil
Procedure are plainly not a statute.  *See, e.g., Apostolic
Pentecostal Church v. Colbert*, 169 F.3d 409, 414-15 (6th Cir.
1999).  It is axiomatic that they do not create or withdraw
federal jurisdiction.  *Owen Equip. & Erection Co. v. Kroger*, 437
U.S. 365, 370 (1978).

Movant suggests that the Fourth Amendment has been
implicated by the DEA's failure to return the allegedly privileged
material, relying primarily upon *Hell's Angels Motorcycle Corp. v.
County of Monterey*, 89 F. Supp. 2d 1144, 1153 (N.D. Cal. 2000)
*aff'd sub nom. Hell's Angels Motorcycle Corp. v. McKinley*, 354 F.3d
1000 (9th Cir. 2004) *opinion amended and superseded on denial of
reh'g*, 360 F.3d 930 (9th Cir. 2004).  In *Hell's Angels*, the court
ruled that the Fourth Amendment rights of a third-party group whose
records were seized by state law enforcement officials were
violated when the property was transferred from state to federal
officials, pursuant to administrative subpoena issued by federal
government, without advance notice to claimants and provision for
claimants to oppose the transfer.  The district court distinguished
the situation of the third-party, stating that "[u]nlike the owner
of documents to whom a subpoena is directed in the ordinary case,
plaintiffs here had no opportunity to object to enforcement and

demand a judicial evaluation of the subpoena." *Id.* at 1150. The present case is, in fact, the "ordinary case" in which Movant had an opportunity to object to the enforcement of the subpoena before complying with it. In such a case, the court in *Hell's Angels* stated that "[t]here, additional protection is unnecessary." *Id.* at 1153. Further, the Court notes that Movant is not here objecting the enforcement of the subpoena itself. The present Motion is not a motion to quash. Rather, through this freestanding Motion to Compel, Walgreens is attempting to effectuate the return of materials that they consider privileged that have already produced by their own accord to the DEA in compliance with the subpoena and over which they had not claimed privilege at the time they were produced. Furthermore, there has not been any determination or even evaluation of the merit of Walgreens' claim of privilege over materials that were concededly produced voluntarily in compliance with the subpoena.

Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereunder to perform." Mandamus is an extraordinary means of providing a remedy where a plaintiff has exhausted all other avenues of relief and the defendant owes him or her a clear, non-discretionary duty. *Total Care, Inc. v. Sullivan*, 952 F.2d 397 (4th Cir. 1991). From this Court's

foregoing analysis, it is clear that Movant has not exhausted
all other avenues of relief, and there has not been any
determination or even evaluation of the merit of Movant's claim
of privilege.  At the time Movant produced the materials to the
DEA, they had not claimed privilege over the documents, and
represented to the DEA that they had reviewed the contents of
their production in order to ascertain whether they were
privileged.  Walgreens did not produce a privilege log until
months after the production, despite the inquiries of the DEA,
and only conveyed their claim of privilege to the DEA after the
documents had been put to use for the purposes of enforcement.
Further, the inquiry as to whether the documents are actually
privileged has not been determined or foreclosed.  As this Court
has stated previously, an ALJ can rule on a claim of privilege
"just as he could rule on any issue of evidence presented to him
during the course of a hearing."  *Interbake Foods*, 637 F.3d at
499.  Appeal to the DEA Administrator of an adverse ruling is
permitted.  21 C.F.R. § 1316.62.  Therefore, given that there
has yet to be an evaluation of Movant's privilege claim, it
cannot be fairly said that a clear, non-discretionary duty is
owed to return the documents.

### 4. Absence of an Underlying Claim

Regarding Judge Davis' denial of their Motion to
Compel for failure to assert a cause of action upon which to

compel the DEA to return the documents in question, Walgreens

concedes that they have not stated a cause of action but

asserts:

> Walgreens is not required to assert a cause
> of action against the United States in
> connection with this miscellaneous action
> arising from an administrative subpoena.
> Just as the government could file a motion
> to enforce the administrative subpoena in
> federal court without asserting a cause of
> action, Walgreens may pursue its motion to
> compel without making a claim against the
> government.

(Mov. Obj. at 9.) However, Congress has expressly provided the

DEA with the right to bring an independent action before the

district to compel the enforcement an administrative subpoena;

an analogous right has not been provided to Walgreens, to say

little of a freestanding Motion to Compel the return of

documents that were produced through compliance with an

administrative subpoena and over which no claim of privilege

existed at the time the documents were produced. Indeed, while

Walgreens has cited cases wherein some courts have ultimately

heard pleadings interpreted as constituting in part motions

quash an administrative subpoena, it is clear that Walgreens is

not moving to quash the administrative subpoena. Their

unequivocal statement of as much is simply unassailable, as they

have stated that "[w]e don't have a motion to quash here." Tr.

7:20-21.

22

Here, there is no pending proceeding and Walgreens is seeking neither a preliminary injunction, nor a temporary restraining order, nor attempting to quash the administrative subpoena.  In essence, Walgreens seemingly seeks to force this Court to intervene and render a determination as to the privilege of documents, thereby seemingly undercutting administrative action without directly challenging the subpoena or the ISO.  There is no substantive statutory authority that provides Walgreens with the ability to make a freestanding Motion to Compel via Rule 26(b)(5)(B) in this context.  This Court declines to create such ability absent any foundational proceeding or enabling precedent.

### 4. Conclusion

For the foregoing reasons, the Court affirms Magistrate Judge Ivan D. Davis' Order denying Walgreens' Motion to Compel the Return of Privileged Material.

An appropriate Order will issue.

<br>

|                        | /s/                                   |
| ---------------------- | ------------------------------------- |
| December 21, 2012      | James C. Cacheris                     |
| Alexandria, Virginia   | UNITED STATES DISTRICT COURT JUDGE    |